First case today is number 22-2142 and 22-2262 Utility Workers United Association Local 537 v. Utility Workers Union of America, AFL-CIO. Mr. Roth? Thank you, Your Honor. Andrew Roth on behalf of the Utility Workers UWA and the other defendants, appellants in the lead case. I'd like to reserve three minutes for rebuttal, if I may. Very well. Would it be okay if we thought of you as main union and the other as independent, or do you have some other... We always like to be known as the main union. No objection there, Your Honor. Okay. Yes. So the independent union, which is a rival union, in their amended complaint, they carved out a very clear theory of the case. It's a breach of contract case, and jurisdiction, federal jurisdiction over the breach of contract case is asserted under 301 of the Labor Management Relations Act. Our contention is that the case should have been dismissed at the outset on a 12B1 motion because there is no jurisdiction over a breach of contract case of this kind. Now, it's certainly true that the UWUA constitution under the Supreme Court's decision in the Journeyman case is the kind of contract that you can sue on under 301, but the plaintiff, the independent rival union, is not a party to that contract. Right. So if there's jurisdiction, it would have to be third-party beneficiary. It would have to be third-party beneficiary. And why aren't they under the Woodell decision? Under the Woodell decision and also this court's decision that preceded it in Lewis, which was cited approvingly in Woodell. Let me just step back for a second. There is no theory of third-party beneficiary in the amended complaint, so that's a separate issue. But even putting that aside for a moment, to be a third-party beneficiary, you have to point to a provision in the applicable contract that gives you third-party beneficiary rights. Would you agree initially at least that the dispute is over a contract between label organizations? Absolutely. Okay, so you at least have the first three references. This is a dispute, but the basis for jurisdiction under 301 is not that it's a dispute between labor organizations, it's a dispute arising under a contract between labor organizations. So to be a third-party beneficiary of that contract, you have to point to a provision in that contract that gives you those third-party beneficiary rights that you're suing them. In Woodell, for example, if the court would look at page 100 and footnote 6, the court said the amended complaint sets out, and in the joint provisions of the complaint, in that case the alleged third-party contract right was the right not to be discriminated against, was actually the right to, that the local would be required to comply with collective bargaining agreements that it entered into. In that case, the asserted right that they had to comply with under the collective bargaining agreement was the right to non-discriminatory referrals under a union hiring law. So that was the asserted third-party beneficiary right of the local union member in that case. The court pointed to that and said, and the language I think that's most apt in the Woodell case is that in finding that there was a third-party beneficiary right and jurisdiction, it said often individual members will have rights under these union constitutions, and when they do, they have a right to sue under section 301. Well, we've, and you can ask counsel from Mr. Pasquarelli when he gets up, what provision are you suing on? What is the third-party beneficiary right? In the normal course, current members will often have rights. In the Woodell case, there was no dispute set out in footnote 6 that there were provisions that gave that right to non-discrimination under a union hiring law in compliance with the applicable collective bargaining agreement, but even current members do not have any rights to union assets upon a national union's revocation of the charter of the local union. That right under the clear terms of the forfeiture provision... That seems to be the overarching theory of your case. The power play that Maine Union pulled on Sunday the 18th of March deprived them, you beat them to the punch. You got the trusteeship created before they disaffiliated. Is that the key to the case? That is absolutely not, no, absolutely not, your honor. There is no issue in terms of whether we beat them to the punch or didn't beat them to the punch. That was the issue. Wasn't that what happened? Well, that was the allegation. They had a 90% vote to disaffiliate, correct? Correct. All right, and that happened on Monday, March 19th, right? Yes. And on Friday the 16th... It was actually Sunday the 18th. No, well, the 16th, Friday, the Maine Union gets wind that this is coming down the pike, and then on Sunday, there was an emergency trusteeship imposed before the disaffiliation vote, right? That's where all this happened, right? Correct, but there was a litigation that was brought. That was the position taken by the breakaway group, I guess, if you want to call them that. I mean, I'm asking... That we did not beat them to the punch. We said... Well, they argued that, and they didn't win that because there was a consent order entered that... Not only didn't they win that, they didn't fight it. Correct, and that's why there was the trusteeship imposed during the interregnum while things get sorted out, right? Well, that was not why the trusteeship was actually imposed for a different reason, but that's not really relevant to this lawsuit because that issue was never litigated, and it's not even relevant to this lawsuit. What's relevant is that subsequent to that consent order, there was no disaffiliation because they agreed that they weren't going to fight the trusteeship. A series of events happened that ended up including a raid by that other group that didn't disaffiliate. They actually fought the trustee local of the UWUA. They fought them in decertification elections, and they won three of them, but about a group of 200 decided to remain. Those other 200 were then... They wanted to move to different... One wanted to move to a new local that was created on their behalf because they were in Eastern Pennsylvania, and there was a community of interest of them. There were other people scattered all around who wanted to be actually merged into another community, but the upshot of all that was at the end of the day, there were no members left in the affiliated local that had been put on the trusteeship. But at this stage, you're arguing jurisdiction. Yes. Well, I'm getting into your merits only in response to Judge Auterman's question, but what I was going to get to is that ultimately, what the forfeiture clause that was invoked was invoked at the point where the trusteeship was ended, and there were no members left, and then the forfeiture clause was invoked because there would be no members left, the local's charter was revoked. Let me get back to my original question. Yes. Section 301 provides its suits. We're in a suit, right? Yes. For violation of contracts. Right. We're here listening to complaints about violations of contracts. Yeah. Between labor organizations, maybe brought to federal court. That's the jurisdictional question. What part hasn't this case met? There hasn't been a colorable allegation of a violation. I mean, I could walk off the street and have... They're a stranger to this contract. They were not a party to this contract. I'm not a party to this contract. I can't walk off the street, Your Honor, and say, this is a lawsuit. I'm claiming rights under this contract. Saying, among other things, that there's money that's owed. They're saying, they're the plaintiff. They're saying they brought the suits and money that's owed to their members. Yes. So it is a suit alleging a violation. Under the contract. Yes. Between the parent and the subsidiary, which has now been disaffiliated and revoked. But they're alleging a violation. I know, but they're not colorably alleging a violation unless they can point... I'm not getting you through the word colorable with. Well, Your Honor, you have to... If I'm not a party to a contract and I come into this court and I say, I would like a million dollars under this contract. There's been a violation. My rights were violated. Okay. Clearly, the court would say, you don't have standing. What rights were violated? Please identify those rights for me in order to assert jurisdiction under 301. It can't be just a stranger to the contract. They are a stranger to this contract. They are a rival union. Well, when you say this contract, you're talking about the union constitution. Well, they weren't. Before the trusteeship, they weren't a stranger, right? Yes, they've always been a stranger. This organization is an independent union that was set up two months before these events started in anticipation of a disaffiliation. And they're arguing they are a party to this contract because they are not. Their members have rights under the contract between the parent union and the original 537. Yes, but they're former members of a different union that was party to the contract. And they're independent suing on behalf of them as third-party beneficiaries. You may be right on that. I don't see how that's a jurisdictional question. Well, I think it is because getting back to Waddell and Lewis, in both cases, the individual member said, it didn't just say there's a violation. It said in Lewis, if you look at page 1311 to 12, it said, section 16, and it pointed to section 16 of the contract and said, this is what gives me the rights. In Waddell, if you look at 100 in footnote 96, it pointed to other provisions of the contract, saying here are the third-party beneficiary rights I'm suing on. They have not identified a single provision in this contract, this constitution, that affords individual members or a rival union any claim to the asset. Isn't the essence of the suit the distribution of the assets? If you get to the merits of the suit, the issue on the merits is when the UWA, at the end of all these events, revoked the charter and claimed under the forfeiture clause those assets, was their claim right? So you could answer that yes or no, because we've got a lot shorter. Well, but I do think there is no jurisdiction, and we certainly adhere to that. But yes, on the merits, your honor, I think our position then, if you get to the merits, is that not only do they lose on the merits, there's a clear and unambiguous provision in the contract that says we are entitled to those assets, not you. That's the contract between the labor unions that they're suing under. Yes. How can that not give us jurisdiction? You can argue the third party. Now, I understand your argument about Waddell. Waddell, there may have been a separate provision that said that the members had rights as beneficiaries. You can argue that. That's an issue. We can decide that question. Your honor, to me, if we win on jurisdiction or on the merits, it doesn't much matter. But I do think that our position is correct. On the merits, let's address the amount. Sure. I think you've got what appears to be a strong legal claim for a reduction of $193,000 or so, because during the time the consent order was entered, up until the end, you had the obligation of the duty to represent. These folks, correct? That's your. I think if you uphold the decision that there is an equitable distribution rights under that contract, then yes, that is our fallback position. Right. I see I'm into my rebuttal time. May I? No, no, that's fine. OK. You don't lose rebuttal time. OK. Thank you. So what I'm wondering is this. If we assume you've got a good legal claim, that there's a logical chain between Maine Union's duty of representation during that period of trusteeship, then it follows as a matter of law that you're entitled to the dues that are paid while Maine Union has the duty of representation. You follow? Yeah. So I'm with you on that. But here's what I'm wondering. This is equity, right? It's equitable distribution. So does the district court have the power in equity to say that even though that's what the law would normally require, because the court found that the disaffiliation was effective on March 19, that Maine Union had no right to gather up all those union dues after March 19? Well, the only way I can answer that, Your Honor, is to say that this is not an equity case. It's a breach of contract case. And the theory of equity that was made was that you get to that distribution point was that you forfeited your rights under the forfeiture clause by virtue of the effective disaffiliation. But that finding is not consistent with the facts of the case. Because they consented to the preliminary injunction, they did not go forward with that disaffiliation. Well, that gets back to the fundamental merits of the case. Was there a disaffiliation or not? Well, but you don't get to the equitable distribution point until you conclude that she was right. I know, but I guess your approach is you're giving no ground on anything. OK, I understand. But I just wanted to make clear that— I was trying to help you get another $193,000 back. But if you wanted to say no jurisdiction, no disaffiliation, then OK, fine. Well, I would like—I mean, if the court gets that far, I would obviously be gravely disappointed. And I think that that's incorrect. But yes, I do think that equity has to be bounded by some principle. I mean, you can't just say—I think the union should never have imposed the trusteeship, even though the other side basically, you know, ratified it and said, it's OK, we're not going to fight it. I don't think equity at that point says, well, even though the other side didn't fight it, I think you did something wrong. So even though the logic dictates that split of money, I'm just going to override that because I think you're bad actors. I mean, I just don't think that's an appropriate equitable principle. All right, thank you. Mr. Pasquarelli? Good morning, Your Honors. As far as the jurisdictional arguments are concerned, quite honestly, I think Judge Fischer probably made the same arguments that I was going to make or made the same statements about it. This is an action under a contract, and the contract is the Constitution and bylaws of the National Union that affected those members who then disaffiliated. When they disaffiliated, I think they are still entitled to raise a claim as to whether or not they have any rights under the Constitution and bylaws of the Utility Workers Union that they disaffiliated from. Excuse me. And under the LMRA, the new union can act as their agent in trying to enforce their rights. And that's what happened in this case. The disaffiliation and the trusteeship occurred fairly close to each other. And I think, actually, the disaffiliation is what prompted the trusteeship. We never got to that issue, though, because the appellants withdrew the trusteeship litigation. And I don't know why they did. I think that was after a year, though, right? That was after a year. That's correct. So weren't your clients put at a disadvantage by virtue of the consent order? Well, they were put at a practical disadvantage by having to agree to it because— They didn't have to. They could have fought it. They had no money at that point. Well, but for whatever reason they chose not to fight it, isn't it true that their rights may have been adversely affected during the period in which the consent order remained in place before they got their final victory? Well, that could have happened. But the consent order was an interlocutory order. It didn't resolve all the issues. It basically said to my clients, look, you can't do anything to upend the trusteeship other than opposing the litigation, which they did. I mean, we filed an answer. You clearly reserved the right to fight the legitimacy of the disaffiliation. That's correct. And you won on that. That's correct. But what I'm struggling with is how could it have been correct for the district court to give independent the dues that were paid while main union still had a duty of representation during the efficacy of the consent order? Well, actually, when the district court asked both of us to put together our—what do I call it—spin on what her award ought to be in terms of dollars and cents, the independent's was they're entitled to be paid for the time and effort that they spent in that representational period. That didn't mean they got all the dues for that period of time. They were entitled to be reimbursed for all the expenses they incurred. OK. So they got a lot of dues during that time and really didn't incur a lot of expenses. That's basically correct. OK. And how do we know that from the record? Were there any findings made on that? There were findings in the sense that the district court asked both sides to put together a proposal for the, I'll call it, equitable distribution of the assets. It almost felt like a baseball arbitration type of thing. Well, I'd actually— You went high and they went low and— No, I really don't think so. No, I think what happened in both cases, Mr. Roth and his people put together what they calculated to be all the assets they were entitled to. We put together the same thing and then took the attitude. You can carve out—and I forget what the number was. It was a little over $100,000 during that period of time to compensate the main union for the representational efforts that they put together. And we didn't have to take testimony on it. The judge asked us to put our calculations together and there were documents filed. Actually, I don't know that they were made part of the appendix, but they're part of the record. And one could look at them and say, okay, here's the story. Now, you would come to the conclusion, if you accepted Mr. Roth's calculations, that it is about $193,000. If you looked at it and accepted the independence calculations, it's a lesser amount. We calculated—they arbitrated a couple of cases in that period of time. And, you know, we said, look, whatever the salaries of their officers were that were involved, you can take that out, et cetera. The basic dichotomy is between dues paid and expenses incurred. That's correct. That's correct. Go back to the jurisdiction for a second. Sure. You said that they were entitled to sue to enforce their rights under the Constitution. Your friend says the members had no rights under the Constitution. Well, they do. They had a right once— What's one of the rights that they had? Well, they had the right once the disaffiliation occurred to get their union dues money back, which was the assets being held by the main union's local. And that's totally in accordance with this court's decision in the Tile Setters Local 32 case. That's exactly what happened in that case. There was a disaffiliation there. The new union said, hey, we're taking all the money, including the real estate. And, I mean, the Constitution and bylaws there were somewhat different than the utility workers one. But this court said, you know, the dues stay with the new—I don't know that they were independent. I think they went with another national union. The dues stay there, but the real estate stays with the old union because of the way things were set up in the bylaws. And that's the claim they're entitled to. They're entitled to the financial benefit of the fact that they paid their union dues, which this court and I think we cited a couple of pretty leading state court cases say are the property of the members. The union holds them as a, I don't know, fiduciary, trustee. I guess that's the best way to say it. So the independent here when it filed this lawsuit is basically saying, look, our members are entitled to this money. And the district court found that they were. And I think that the district judge was correct in determining the jurisdictional issue because the contract that you file the thing under is the Constitution and bylaws. And then when you look at the district court's, or excuse me, this court's determination in the prior cases that it's decided, file setter's local 32 when it came right down to this issue, and the Lewis case, this court's upheld. In fact, this court presaged the Supreme Court in Woodell and said, look, union members have third party beneficiary rights against their either local or national union. And that's what this case is all about. The only reason that the issue is muddied in this case, as I see it, is that a trusteeship came into place. And I don't really know that the trusteeship, I mean, the trusteeship obviously roiled the water quite a bit, but I don't think it changed or means that the district court's decision is incorrect. The trusteeship has to do with who represents these people for the purpose of collective bargaining and who's going to administer this local now. Well, everything gets sorted out. Until everything gets sorted out. That's correct. Then when the trusteeship litigation was withdrawn, the clock gets set back to the day before March 19th, like there's no trusteeship. So the disaffiliation proceeds down the road. Mr. Ross said by entering into the consent preliminary injunction, we abandoned the disaffiliation. That's untrue. We never abandoned the disaffiliation. We had to do what we had to do with regard to the trusteeship. And a month later, in three separate local, what do I call it, entities of this local, members filed decertification petitions because they weren't happy about waiting until the trusteeship litigation was over. The independent didn't raid anybody. And the record will show that there are three separate, actually turned out to be five separate decertification petitions filed by individuals, not by the association. We certainly weren't upset about it. But, you know, it was an end around by the members to get to the position they wanted to be in when they thought they disaffiliated on March 19th. And the consent order doesn't mean there was no disaffiliation. The consent order meant we couldn't continue to battle with the national and the local over the trusteeship aspect of this case other than defending the lawsuit. And we were prepared to do it. The lawsuit got withdrawn right after the district court said, all right, put together a trial plan, put together a discovery plan. I had sent out notices of deposition. They didn't want me to take depositions of the national president. That then brought about, well, we're just going to dismiss the trusteeship litigation. You've, on appeal, on your cross appeal, you're challenging the amount of money that the district court allotted to the independent union. That's correct. For the members, for capital dues. That's right. Well, for their, that's correct, that's correct. Their fair share of the dues. Right. Question that I'm not sure of the answer and I'm not sure what the record says. Were in fact, was the union, was the independent union, were they certified during the period of the trusteeship in such a way that they did in fact provide the representation? They did, but not until the late part of 2018. They were certified by two decisions here in Pittsburgh and one decision in the NLRB in Cincinnati. Those certifications occurred in, I think, August of 2018 for about 43 members in West Virginia and in late December of 2018 for about 400 people in Western Pennsylvania. Subsequent to those certifications, they did in fact, as an independent union, represent the members prior to everything, prior to the discontinuation of the trusteeship. That's right. They represented members in Western Pennsylvania from January, February, and March in the 2019 and in West Virginia from August of 2018. So why aren't they entitled to the net share of the dues? That was our contention, they were. Our contention, we told the district judge that to the extent that Mr. Roth's clients provided representational benefit during the trusteeship, they were entitled to be compensated for whatever their expenses were there. But once either the trusteeship ended or the representational duties ended, and they did end in August in West Virginia and in December in Western Pennsylvania, they weren't entitled to any more money. And our argument in terms of calculation is we contended that assets were around $900,000 and I think our calculations were about $100,000. If they weren't entitled to it, why were you entitled to it? Pardon me? Why would you be entitled to it if they weren't entitled to it? Because those were assets where the money earned from the union dues of the members we represented. As a national union. When we were a local of the national union. And if you look at the Tile Setters case, as I read that decision, it says that the dues are the, I'll use a term, assets of the members. The union is their fiduciary or trustee. That's the position we took. And I didn't really understand your claim for the social fees. Isn't it true that the social fees were just part of the amounts, not a separate claim? You suggested that they could have done a Rule 68 offer of judgment or something. And I didn't quite understand that because the social fees were a component of the larger pie, not a separate claim. Well, they were a component of a larger pie, but for instance, and I'm just pulling numbers out of the air. If the union dues were $40 a month, those members that also wanted to establish a social fund paid another $10 a month in separately. So the social funds were separate money from the union dues, although the national union took them all over. The reason that we say that you can't isolate the expense involved in getting the social funds from the expense involved in getting the union dues is it was one big pile of money that we had to spend all this legal time to get. Had the national union said, OK, look, here, we'll agree to an offer of judgment for the social funds at that point. But could they have done that? I mean, I don't know why they couldn't have. Well, because it wouldn't be a separate claim. I don't know how they could have done that without prejudicing their right to continue to fight for the pie writ large. They wouldn't have prejudiced their rights because we would have agreed and we took the that they're like a separate bank account that applies only to discrete members in certain districts. It didn't apply to everybody. Certain places said we want a social fund. Other places said we don't have anything to do with that. So our contention was they could have. And our argument about the attorney's fees is everything was mixed together so we couldn't segregate one from the other. And very quickly on the attorney's fees issues, the district court said 301 doesn't permit attorney's fees. And I think that's incorrect. In Ames versus Westinghouse, I think, which is a Third Circuit decision, it was a DFR case. Attorneys fees were granted as part of the compensatory damages. And I cited the court to Hall versus Cole. Now, that was a LMRDA case. But there, which is pretty much similar to what happened here, the Supreme Court ruled that the common benefit to everybody in recovering their money entitled the person that went out and did the work to get the money, consul fees. And that's what happened here. I mean, I don't know how Ames helps you because Ames says follow the American rule unless there's a contract or statute authorizing fee shift and follow the American rule. And I don't see that you've cited a provision in the contract or a statute that says a winner gets attorney's fees. Oh, there is not. But Ames awarded attorney's fees to the person who sued his union for failing to represent him. And this court ruled that that was part of the compensatory damages that that person incurred to try to get his job back. We're making that same argument here. That's part of the damages we had to incur to get our dues. I mean, if you read Ames, the court— So you're saying, well, it's not attorney's fees then. It's compensatory damages. It is. That's right. But she wouldn't consider that as part of the determination. No, I see my clock just ran out. Thank you, Your Honor. Thank you, Mr. Pasquarelli. You'll hear Mr. Ross rebuttal. Your Honor, unfortunately, there's a basic confusion here, and it's probably a function of our brief. I'll try to untangle it in three minutes or if the court will indulge me in more. The consent order, Mr. Pasquarelli said, we live to fight another day in the consent order. And you said then in response, well, you did and you won on that in this case. But that's not accurate. The issue that they didn't fight on was the propriety of the trusteeship. No, they threw in the towel on that. I said they won on that. I wasn't talking about the trusteeship. I was talking about disaffiliation. They have disaffiliated, have they not? No. They have not? No. They're still part of Maine Union? That's news. They're not part of Maine Union. They're independent. You said they're out. Because the disaffiliation didn't take place. But then they, because they agreed not to take the money. The federal district judge said the disaffiliation was effective. Yes, but the district judge made a factual point that's inaccurate. You need to convince us how the district judge was wrong on that. And it seems to me that you're presuming that the disaffiliation was inefficacious. When a federal judge has already found it was efficacious. And I haven't yet heard why it was mistaken. It didn't actually take place because of the consent order. The trusteeship came in. That's an argument, but that's not. Well, it's a fact. The trusteeship came in. And what did the trusteeship do? It said you are no longer the officers of this affiliated body. You cannot take the money. You cannot act as if you were the officers of this other union. And they said, fine, we'll give you the money back. Here's the money. Temporarily, while the question of the disaffiliation gets adjudicated. Was that not part? And they didn't, but they never did get adjudicated. Because the legality of the trusteeship was dependent on whether it had a proper purpose. Was it done to block the disaffiliation? What did the district court say about that? The district court in the trusteeship case didn't say anything about it. Because it was dismissed. It was dismissed because the local that we put in trusteeship had no more members. And it didn't exist anymore. There was no purpose for the trusteeship. But it wasn't a concession. It wasn't dismissed as a concession that the trusteeship was invalid. That was never litigated in the trusteeship. I really urge the court to look at the local 450. Let's say that this affiliation was never finalized. It didn't happen. The court found that the national couldn't transfer the assets. Because a transfer had to be authorized by the local's constitution. The local didn't exist. Now, the district court judge was very confused on a number of points, including that one. Everybody's confused except you. I'm trying to untangle it, Your Honor. The court cited section 463 of the LMRDA. That only applies during the course of the trusteeship. That means that the international, when it imposes a trusteeship, can't take the money out. It can't loot the trustee entity. It didn't do that. No, it ended the trusteeship when the local had no more members. It ended the trusteeship. The trusteeship was over. 463 had no application whatsoever. And then it invoked the forfeiture clause of its constitution to take the funds that were left over in the local that had been stripped of members by a rival union, not through a decertification. There was no decertification. They rated specific units. A decertification means you take over the entire membership. That's not what happened here. They agreed they wouldn't do that. And then they wouldn't have had to file these NLRB petitions to take over various segments of the local. They claim that they became the local through disaffiliation. How could you become the local and then sue them, basically, on the NLRB, challenge them, challenge their jurisdiction? So the facts. It's not the question of the legality of the trustees. The legality of the decertification could have been litigated under the theory of the local 450 case that they cite. They could have brought a counterclaim under the LMRDA and said, this trusteeship was invalid. You tried to block. It's not a proper purpose to block to put a trusteeship on. And they could have gotten before the litigation was ended. The litigation was only ended because there was no more local left. So there was no more trusteeship. That's why the litigation a year later was ended. But they could have sued as in local 455. And if they had won, they would have had the assets. They could have. Mr. Rothman, what if there was no local left at that point, but there was an independent? Why shouldn't they have gotten their shares as a district court? Because this is a contract case. They have to. For capital issues. Why shouldn't, you're fighting. They shouldn't get a cent because they raided this other local. They didn't disaffiliate from the union. They agreed they wouldn't disaffiliate from the union. But they were certified to represent the members. In certain subsets of the union. They brought a board proceeding. So they carved out the notion that they should be entitled to the leftover assets of an entity that they went out and raided and took over portions of. This is a contract case, Your Honor. They're asking to be compensated for representation. If they didn't. There is no concept in union law that I'm familiar with. And I've been doing this for over 30 years as a union lawyer. That the members are entitled, you know, because they pay dues. The dues have to be held in trust for them, no doubt. But they don't have a property interest and say, all right, you know, this year I had two arbitrations. So I should get, you know, you didn't represent me well. So I should get my dues money back or something like that. This is breach of contract case. This is a contract case where they're saying, a stranger to this contract is saying, after all these events unfolded, you were left with a pocket of money, a lot less pocket of money, because they started paying dues to this independent entity. We should get that too. So assuming we have jurisdiction, I know that's something for you to accept. I do not accept it, but it's not for me to decide, obviously. What is it that you want us to do? You would ask for summary judgment. I would say, I would say. Are you asking us to reverse the denial of summary judgment? I'm asking you to, the court issued, before it got to the equitable distribution, it issued a summary judgment ruling that said the union's motion for summary judgment on the contract claim, if there's jurisdiction, is denied. And they're, they are, they have, they're entitled as a matter of law, they, she accepted in part their motion for summary, cross motion for summary judgment, saying they were entitled to some, we would ask that the court be reversed on the ground that the, the contractual entitlement to those assets was with the national union under the forfeiture clause in the national union's constitution. That's the merits ruling that we would be asking the court for, if the court would, would withhold. Wouldn't that be a windfall to the national union? In what, in what sense? The national union is, it's not a question of windfall, it's a question of contractual right. When the local was raided, the local lost all its members, and there was a pot of money left, that they, they, they essentially, I mean, I think the way to look at. Wasn't that pot of money, wasn't that pot of money enhanced over a period of time with ongoing dues? Ongoing dues by the, by the members that they didn't raid. I mean, once, once, once they succeeded in the board proceeding in taking over certain units, then they, going forward, the dues were theirs. But they, I think the proper way to look at it, Your Honor, is they, when they bolted from the union, not through a disaffiliation, but through a series of board proceedings, when they, when they acquired a portion of the union, they have, to the extent they had any claim under the union constitution, which they don't, to dues, they affected their union, they effectively abandoned it. They said, we don't want any part, you can't get, if a union, if somebody member resigns or something because they don't want to be represented by the union anymore, they don't get their dues back. There's nothing in the, but this is a contract, Clay, what, what, they have not cited a single provision in the contract that says that, that members who decide to go elsewhere get their dues money back, because, you know, it would be a windfall for the, for the, for the national, when the local's charter is revoked, to keep that money. They have, they have no claim on that money, under, under a, certainly not under a contract theory, maybe under, maybe it struck the district court, it certainly did, that it was, it would, that would be an equitable result, but this is not a case in equity, under some fund, that there's some equity claim made under, there's a claim made under the union constitution. And what is the, what is the claim? They still have not, throughout the course of this three-year litigation, cited a provision. Cite me a provision. We've cited a provision that governs the distribution of assets in this type of country. Undisputed, facts are undisputed, that the disaffiliation didn't in fact take place. That's the key, the key to the case is, they didn't, under your theory of the case, they did not disaffiliate. If they had an effective disaffiliation, things would be very different, right? They would be very different in the sense that the district court would be right that we didn't have any rights left vis-a-vis those assets under the forfeiture clause, because. Right, but because they didn't. As a factual matter, they had disaffiliated. But because under your view, they didn't disaffiliate. The trusteeship was imposed the day before the disaffiliation vote. And that's important, because if the trusteeship and the consent order precluded an effective disaffiliation, then there were important rights that flowed from there. That's not our position. Our position is that fact is irrelevant. What fact is irrelevant? Whether we did the trusteeship the day before or the day after. It's irrelevant. It would have been very relevant if that trusteeship lost. How could they have, I think we had an agreement a minute ago. Yes. If there was a proper disaffiliation, an effective disaffiliation, things would be different and more in their favor. More in their favor. So I'm asking how could they have disaffiliated? Here's how they could have disaffiliated. They could do exactly what the plaintiff did in the local 450 case out of the Eastern District of New York. They could have followed. We brought an enforcement action to enforce the trusteeship and sought an injunction to enforce it, which they consented to. They could have done one of two things. They could say, nuts. We're not consenting to this. You prove your case. We think that you did this to block the disaffiliation. They didn't do that. They could have done that. They could have, if they were out of money, they could have accepted the injunction and lived to fight another day. But they could have then brought a counter, they followed an answer and defenses like three weeks after the consent order. They could have included a counterclaim like the claim brought by the plaintiff in the local 450 case. They could have sued under 464, 29 USC 464 gives the right of a member or a subordinate body that's been put in trusteeship to say this was imposed for an improper purpose. We want the injunction. We want you to dissolve the preliminary injunction. We now have the money to fight this. We want you to enjoin them permanently from going forward with this trusteeship and blocking this disaffiliation. We still want to go forward with this disaffiliation. That's what the local in 450 did and they won. All right. So there were things that they didn't win here. They didn't do that. There were things they could have done to disaffiliate and they didn't do it. They didn't do it. There was no effective or proper disaffiliation. They abandoned it. They decided we're going to do something different. All right. And I don't know why. We understand your position. Thank you. Thank you, Mr. We'll take the case under advisement. Thank you.